WILLIAM KITTLER v. B. W. PHILLIPS

5-4806                                          437 S.W. 2d 455

Opinion Delivered February 24, 1969

*Odell C. Carter* for appellant.

*Gill & Clayton* for appellee.

FRANK HOLT, Justice.   This is a boundary line dispute between adjoining land owners involving a 16- to 17-foot strip of land.   The appellant owns a 40-acre tract on the west and appellee owns 16½ acres lying east of the disputed line.   When appellant attempted to relocate an old fence line by the construction of a new fence along what he contends to be the true boundary line, the appellee filed this suit for an injunction.   In deciding the issue for the appellee, the court found:

> "The old fence row and fence has been along the common boundary of the two tracts of land now owned by the parties for more than a half a century.   The parties and their predecessors in title by their actions in relation to said old fence row and fence caused the same to be 'silently acquiesced' as the boundary between the two tracts of land."

For reversal the appellant contends that the findings of the chancellor are against the preponderance of the evidence.

The appellant purchased his 40-acre tract of land, which adjoins appellee's 16½ acres, in 1956.   He presented evidence that when he purchased his lands, the fence went up through some woods; that the seller told him the fence was not the true boundary line; that he did not know appellee or his predecessors in title claimed any interest in the disputed land until 1967; that there never

was any mutual understanding or agreement that the old fence constituted the true boundary; that in 1957 or 1958 he relocated and reconstructed the fence along and "fairly close" to the old fence line to contain cattle and cleared the land on both sides of the fence; that he had no intention of this or the old fence being any recognition of the true boundary line; that no one had "farmed" the land within 100 feet east of the old fence until appellee began using this strip of land as a turnrow when he started farming about 1962; that appellee had tried to buy the disputed strip from appellant; that in conversations with appellee, they both understood the old fence was not the true line and that he, appellant, did not learn the exact location until 1967 when a survey was made just before this action.

The appellee purchased his lands in 1961. He testified that the old fence line, between his 16½ acres and appellant's 40 acres, was there when he bought his property, and that he had personally observed its existence for more than 25 years. He has owned other property in the community since 1943. According to appellee, he had never offered to buy the disputed strip of land from appellant; appellant had never communicated to him any non-recognition of the fence line as being the accepted boundary; appellant had never cleaned up any land on his [appellee's] side of the fence, it had been "cleaned up for 25 years;" his 16½ acres "had been farmed up to the fence" for that length of time; the area was not wooded: "There was no timber there and there haven't been any. Since I been going out there." Further, according to appellee's evidence, both he and his predecessors in title had occupied the lands east of the fence for at least 25 years and had recognized the old fence row and line as the visible boundary for a period of approximately 50 years; neither the appellant nor his predecessors in title had at any time occupied, used or controlled the disputed land east of the old fence line and that the first attempt by appellant to use this disputed strip was in 1967, which action resulted in this lawsuit.

A surveyor testified that in 1967, while conducting a survey in that vicinity, the appellant was present and expressed no knowledge as to where the true line was; acknowledged the old fence line had been used as a boundary; and that appellant made no objection to his using the old fence line as a boundary.

According to appellee, the appellant repaired and "re-posted" the old fence about 10 years before this controversy and there was no "change in the location of this old fence line." This lawsuit resulted when the appellant, or someone, relocated this "old fence" about "eighteen" feet to the east "at night."

The location of a disputed boundary line, being an issue of fact, is determined by a preponderance of the evidence and on appeal we affirm unless the finding of the chancellor is against the preponderance of the evidence. *Mason* v. *Peck*, 239 Ark. 208, 388 S.W. 2d 84 (1965).

The appellant ably argues that to establish a boundary line by acquiescence there must be a mutual or express agreement of the dividing line. However, in *Stewart* v. *Bittle*, 236 Ark. 716, 370 S.W. 2d 132 (1963), we said:

"It may be conceded, as claimed by appellant, that there never was any express agreement to treat the fence as the dividing line between the two parcels of land. Such an agreement, however, may be inferred by the actions of the parties."

To the same effect, see *Deidrich* v. *Simmons*, 75 Ark. 400, 87 S.W. 649 (1905) ; *Gregory* v. *Jones*, 212 Ark. 443, 206 S.W. 2d 18 (1947) ; *Tull* v. *Ashcraft*, 231 Ark. 928, 333 S.W. 2d 490 (1960) ; *Weston* v. *Hilliard*, 232 Ark. 535, 338 2d 926 (1960) ; and *Barnes* v. *Young*, 238 Ark. 484, 382 S.W. 2d 580 (1964).

A boundary line by acquiescence may well exist without the necessity of a prior dispute. *Gregory* v. *Jones, supra.* Nor is there any requirement of adverse usage up to a boundary fence to establish a boundary by acquiescence. *Morton* v. *Hall,* 239 Ark. 1094, 396 S.W. 2d 830 (1965).

The chancellor has the advantage of seeing and hearing the witnesses in evaluating conflicting evidence. We see only the printed material and exhibits. Therefore, when the evidence is in close dispute as to where the preponderance lies, we cannot say the chancellor was in error. *Murphy* v. *Osborne,* 211 Ark. 319, 200 S.W. 2d 517 (1947).

In the case at bar, we cannot say that the chancellor's finding that a boundary line is now established by acquiescence is against the preponderance of the evidence.

Affirmed.