In re ARKANSAS COMMUNITIES, INC.
Debtor in Possession.

ARKANSAS POWER AND LIGHT
COMPANY, Plaintiff,

v.

ARKANSAS COMMUNITIES, INC., formerly known as Arkansas Community Development Corporation; Westinghouse Credit Corporation: Horace H. Sewall and Martha G. Sewall, His Wife; L.B. McLeod and Vera B. McLeod: Stanley K. Ross and Sara C. Ross, His Wife; Diamondhead Property Owners Association, Inc.; Worthen Bank and Trust Company, N.A.; Frances X. Severtsen and Alice D. Severtsen, His Wife; Edwin B. Schmink and Geraldine B. Schmink, His Wife; Union Planters National Bank of Memphis, Memphis, Tennessee; Frank H. Surpless and Margaret K. Surpless, His Wife; Harold J. Smith and Layde Smith, His Wife; First Federal Savings and Loan Association, Hot Springs, Arkansas; Mr. and Mrs. Thurman O. Watson: Mr. and Mrs. Charles Bradshaw; Mr. and Mrs. Bobby Morgan; Mr. and Mrs. Raymond Hixon; Mr. and Mrs. Edwin Hoffman; Mr. and Mrs. John A. Eubanks: Mr. and Mrs. George Wormley: Mr. and Mrs. Thomas J. Power; 'Donald G. Heins; Charles Lowery; Mr. and Mrs. Robert L. Rich; Mr. and Mrs. Harry W. Fogle; Ralph G. and Mildred Grossman; and Ben T. Guzzo, a/k/a Dennis Mitchell; Mrs. Leo Brouwers; Thomas G. O'Malley; John E. Meier; and William J. Jones and Mary H. Jones, His Wife, Defendants.

No. 83–6011.

United States District Court,
W.D. Arkansas,
Hot Springs Division.

Aug. 31, 1983.

Don F. Hamilton, Little Rock, Ark., for plaintiff.

Robert J. Brown, Little Rock, Ark., for Arkansas Communities, Inc. formerly Arkansas Community Development Corp.

W.P. Hamilton, Little Rock, Ark., for Westinghouse Credit Corp.

Herbert C. Rule, Little Rock, Ark., for Worthen Bank & Trust Co.

J.E. Sanders, Hot Springs, Ark., for Mr. and Mrs. T.J. Powers and First Federal Sav. & Loan Ass'n of Hot Springs.

Richard C. Raines, Memphis, Tenn., for Union Planters Nat. Bank of Memphis.

Bob Scott, North Little Rock, Ark., for Harold J. Smith, et al.

A. Delbert Mickel, Jr., Little Rock, Ark., for Mrs. Leo Brouwers.

Michael W. Mitchell, Little Rock, Ark., for Thomas G. O'Malley.

Ed McCorkle, Arkadelphia, Ark., for Mr. and Mrs. Thurman O. Watson.

Harry W. Fogle, pro se and for Barbara T. Fogle.

R.A. Schneider, Hot Springs, Ark., for Mr. and Mrs. Robert L. Rich, Ralph G. Grossman and Mildred Grossman.

Gene Stipe, Oklahoma City, Okl., for Mr. and Mrs. John A. Eubanks.

R. Julian Glover, Hot Springs, Ark., for Charles F. Bradshaw and Maureen Bradshaw.

Bruce D. Switzer, Crossett, Ark., for L.B. McLeod and Vera McLeod.

## MEMORANDUM OPINION

OREN HARRIS, Senior District Judge.

In this bankruptcy action the plaintiff, Arkansas Power and Light Company (AP & L), has filed a complaint against the defendants, Arkansas Communities, Inc., (ACI) formerly known as Arkansas Community Development Corporation, as the Debtor in Possession, in this Chapter 11 proceedings, in that the debtor in possession filed voluntary petition on April 29, 1980.

The plaintiff, AP & L, is a corporation organized and existing by virtue of the laws of the State of Arkansas. Plaintiff alleges it is the owner and entitled to possession of the following lands in Garland County, Arkansas, to wit:

The East Half of the Northeast Quarter (E ½ NE ¼) of Section Thirty One (31), Township Three (3) South, Range Eighteen (18) West, all in Garland County, Arkansas.

The plaintiff includes in its complaint a list of instruments, approximate dates, and parties from whom title to the above described property was acquired, together with the history of the title on which the plaintiff claims it is entitled to possession of a certain part, consisting of approximately nine and one-half (9½) acres, wrongfully held entirely by and in possession of defendants who refuse to deliver possession thereof to plaintiff.

The defendant, Arkansas Communities, Inc., is an Arkansas corporation which became the corporate successor to Arkansas Community Development Corporation, February 6, 1969, and, by virtue of its corporate successor status, claims title ownership in the disputed property as part of what is described as Diamondhead Subdivision, as well as title to all other portions of the property in the subdivision. Defendant claims ownership of the property in dispute and in its possession by warranty deed dated May 30, 1969, to the following described property:

All of the Southeast Quarter (SE ¼) of the Southeast Quarter (SE ¼) of Section 30 South, Range 18 West, EXCEPT that part thereof conveyed to Arkansas Power & Light Company by Warranty Deed recorded April 28, 1930, in Record Book 185, at Page 201, of the Records of Garland County, Arkansas, Containing 20 acres more or less.

The plaintiff also alleges that numerous named defendants hereinabove claim an interest in certain of the property as successors to defendant Arkansas Communities, Inc. These defendants claim an interest in the property in dispute by virtue of corporate warranty deeds from defendant ACI, and by virtue of mortgages found in the records of the Recorder and Clerk of Garland County, Arkansas. It is further alleged that the interest of these defendants is based on the erroneous claim of Arkansas Communities, Inc., and, therefore, is without foundation and that they wrongfully hold possession of these lands.

On or about December 18, 1979, plaintiff, AP & L, filed suit against the defendants named in this action in the Circuit Court of Garland County, Arkansas, Case No. CIV–79–953. The defendant Worthen Bank and Trust Company, N.A., filed an action on April 28, 1980, in the Chancery Court of Garland County, Arkansas, Case No. 80–252, against the plaintiff and others seeking to foreclose its mortgage lien on certain lands involved in this action. Since the two actions are subject to the jurisdiction of the Bankruptcy Court, the complaint alleges that both suits should be permanently stayed and the cause of action alleged in the complaint resolved in this bankruptcy proceeding. The plaintiff, therefore, seeks declaration for fee simple absolute title to the property involved in this litigation claimed and held by defendants; to be awarded possession of the lands and properties thereon; and such writ and other process to be issued so as to enable the plaintiff to obtain possession of the property.

In its separate answer, the defendant, ACI, denies the claimed ownership by the plaintiff. It contends that it is in possession of and occupies only lands to which it has bona fide title. Subject to subsequent bona fide conveyances and equitable interest, ACI claims it is the owner in fee simple absolute of the properties described in the complaint of the plaintiff.

On the 26th day of September, 1980, the Bankruptcy Court conducted a pre-trial conference pursuant to notice and plaintiff AP & L appeared by its attorney, Don F. Hamilton; defendant ACI by its attorney, Robert J. Brown; defendants Westinghouse Credit Corporation and George Morley by their attorney, W.P. Hamilton; and the other defendants by their attorneys, Bob Scott, R.A. Schneider, and Tommy Thrash.

After discussion and argument of counsel for the parties, the court determined that the trial of the case should be divided into phases, the first phase to be tried to the court being the issue of title between AP & L and defendant ACI involving the disputed location of the common corner of Sections 29, 30, 31 and 32, Township 3 South, Range 18 West, all in Garland County, Arkansas; and the second phase, if AP & L prevails in the first phase, to be tried to the court being the rights and entitlement of the other defendants. An order of the Bankruptcy Judge was entered which included discovery procedures in anticipation of trial in early January, 1981.

For reasons not indicated in the record, the action was not tried as scheduled. The plaintiff, AP & L, filed a motion to refer the adversary proceedings to a Special Master to find facts and resolve the issues in the case. On September 11, 1981, the judge entered an order, without objection from any defendant, referring the case to a Special Master in that an exceptional situation exists which warrants the action for a Special Master to resolve the question of facts and the issues of law. The court concluded that the cause was at issue and no demand for jury trial had been made.

The Honorable Harley Cox, a duly licensed and practicing attorney from Pine Bluff, Jefferson County, Arkansas, qualified and willing to serve, was designated as Special Master to take evidence and report same, together with findings of fact and law. Further, the Special Master "shall" recommend the judgment to be entered thereon to the court. Authorization to make such orders as required to accomplish a full hearing on all matters of fact and law at issue was provided.

In accordance with the order of the Honorable Charles W. Baker, Bankruptcy

Judge, entered September 11, 1981, Mr. Cox, the Special Master, heard and reviewed the evidence on behalf of AP & L and ACI. Briefs were filed by counsel for the parties and on the basis of the evidence and the applicable law the Special Master reported findings, opinion and recommendations to the court. Based thereon, the Special Master recommended that the complaint of the plaintiff be dismissed.

In his report the Special Master correctly stated that the essential dispute involved the true location of the corner common to Sections 29, 30, 31 and 32 in Township 3 South, Range 18 West, in Garland County, Arkansas. Carefully prepared and complicated surveys were made in an effort to locate the original corner as established by a Government Land Office Survey by John C. Hale, the Deputy Surveyor. The Master concluded that Mr. Hale originally platted the area for the United States in 1837 and 1838.

Special Master, Cox reported to the court that Mr. Bill Fletcher, an engineer, testified on behalf of the plaintiff and Mr. Robert G. Watts, an engineer, testified on behalf of the defendant. Both witnesses, according to the report, agreed that John C. Hale falsified certification of his survey and that a significant portion of the reflected dimensions of the platted area were inaccurate in reference to actual monuments. Similarly, both agreed that none of the original witness trees or similar monumentation were distinctly available in proximity to the common corner.

Further, the Master reported that the burden of proof was upon the plaintiff, AP & L, to establish its ownership of the questioned land by a preponderance of the evidence. The Master concluded that in his opinion AP & L had failed to discharge that burden of proof.

Also, the Special Master reported that in his opinion there was inadequate evidence to sustain the defense of laches, estoppel, and the statute of limitations raised in the answer ACI.

Subsequent to the report of the Special Master June 10, 1982, counsel for the plain-tiff filed general objections to the Special Master's report, a motion to vacate and, alternatively, a motion for extension of time to file specific objections.

On June 23, 1982, the Bankruptcy Judge entered an order scheduling a trial to be held on July 20, 1982, on general objections to the Special Masters report, motion to vacate and, alternatively, motion for extension of time to file specific objections until July 19, 1982. In the meantime, on July 19, 1982, counsel for the plaintiff filed specific objections to the Special Master's report. The basis of the objections and motion to vacate the report was that it simply recommended dismissal of the plaintiff's complaint upon a general narrative expression of opinion and conclusions. It is contended that the Master failed to make detailed findings of fact and conclusions of law based upon the evidence and, therefore, patently inadequate. The objections further included numerous errors by the Special Master, including conclusions of law contained in the report. Counsel for the plaintiff filed a substantial and rather extensive brief in support of the objections to the Special Master's report.

Counsel for the defendant ACI filed a responsive brief in support of the report of the Special Master.

The scheduled hearing on specific objections and motion to vacate was not held on July 20. However, on September 23, 1982, Judge Baker, Bankruptcy Judge, entered an order of recommitment of the case to the Master with instructions. In its order, the Judge directed that the Master prepare a memorandum opinion of findings of fact and conclusions of law and to submit a precedent for judgment in implementation of his memorandum opinion. In resubmission of the cause to the Special Master, the Bankruptcy Court relied upon Rule 53(e) of the Federal Rules of Civil Procedure and Rule 752 of the Rules of Bankruptcy Procedure.

In accordance with the instructions and directions of the Bankruptcy Court, Mr. Cox, Special Master, submitted recom-

mended findings of fact and conclusions of law on December 12, 1982, with respect to the matter referred to him by the Court.[1] The Master made 12 specific findings of fact based upon the January, 1982, hearings, and briefs filed by counsel at appropriate intervals in the proceeding. Additionally, the Master reached five specific conclusions of law applicable to the case. The final conclusion, No. 5, recommended by the Master was that the complaint of the plaintiff, AP & L, should be dismissed due to the failure of the plaintiff in meeting its burden under the law by a preponderance of the evidence. A copy of the Special Master's recommended findings of fact and conclusions of law is attached to this memorandum as EXHIBIT "A."

On December 17, 1982, counsel for the plaintiff filed specific objections to the recommended findings of fact and conclusions of law by the Special Master. Counsel reiterated previous objections to the Special Master's report filed together with memorandum brief July 19, 1982. Further, objection is made only if the Bankruptcy Court refuses to reject the Master's findings in the first report of certain language included therein with reference to the location of the original Hale common corner.

Objection was entered by the defendant to findings of fact and conclusions of law by the Special Master on the question of adverse possession, laches and limitations. In the recommended findings of fact and conclusions of law the Special Master determined in the second paragraph of Item 12 that "no person or company has had open and continuous adverse possession of the disputed land for a period of 7 years and the plaintiff has not been guilty of laches in assertion of its claim thereto." Counsel for the defendant raised these questions in answer to the complaint. Counsel for both parties relied on previous briefs in support of their objections.

On January 5, 1983, the Honorable Charles W. Baker, Bankruptcy Judge, entered memorandum opinion adopting verbatim the recommendations, findings of fact and conclusions of law submitted by Special Master Cox, without elaboration or further comments on the record. Counsel for the plaintiff objects strenuously to the conclusions reached by Judge Baker, and the order pursuant to the opinion. It is the contention of defendant's counsel that the Bankruptcy Judge was required under the law to give consideration to and to make reference to specific objections entered on behalf of the plaintiff.

The crux of the opinion entered by the Bankruptcy Judge, as recommended by the Special Master, is included in Item 11, to wit:

The establishment of the common corner at Point "45" on Arkansas Power & Light Company's Exhibit No. 8 is not supported by evidence which could not be susceptible of more than one reasonable interpretation . . . .

Also, the Judge concluded in the first paragraph of Item 12 that:

Arkansas Power and Light Company has failed to demonstrate the location of the originally established common corner at the point marked "45" on its Exhibit No. 8 in the cause by a preponderance of the evidence . . . .

Also, in Item 10 Judge Baker concluded:

10. The *Manuel for Instructions for the Survey of the Public Lands of the United States,* 1973, promulgated by the United States Department of Interior, Bureau of Land Management (the "Manuel") contains the following instructions in connection with Chapter V, "Restoration of Lost or Obliterated Corner:"

5–21. The rule for restoration of lost corners should not be applied until all original and collateral evidence has

---

1. After the Bankruptcy Judge, Charles W. Baker, entered an order of reference to a Special Master, September 11, 1981, a hearing was scheduled and concluded on January 20, 1982, by the Honorable Harley Cox, Special Master, in Little Rock, Arkansas. The hearing was

transcribed and filed with the court in this proceeding. Thirteen witnesses appeared and testified in the case, and numerous exhibits were entered supplementing the testimony of the witnesses.

been developed. When these means have been exhausted, the surveyor will turn to proportionate measurement, which harmonizes surveying practice with legal and equitable considerations. This plan of relocating a lost corner is always employed unless outweighed by conclusive evidence of the original survey.

and

> 5–46. The rules cannot be elaborated to reconstruct a grossly erroneous survey or a survey having fictitious field notes.

Section 5–16(2) of the Manuel further provides that evidence as to the location of a lost or obliterated corner *should not be susceptible of more than one reasonable interpretation.* (Emphasis supplied.)

Counsel for the plaintiff has timely filed notice of appeal for review by the District Court. Notice of filing notice of appeal was promptly entered as notice to the defendants. Notice of cross-appeal to the District Court was timely filed on behalf of the debtor, ACI. Designation of the record and notices have been appropriately entered.

This is a most unusual lawsuit over a dispute involving, primarily, the plaintiff, AP & L, and the Defendant, ACI, as to the ownership of a small tract of land. It is unusual because, among other reasons, the parties in the dispute have stipulated that the dispute does not involve the record title to the property in question. Each of the parties possesses record title as to the respective property claim, which is not in question in this action. The dispute is over the location of the land consisting of approximately 9.5 acres. The decision as to title to the property in dispute would properly be based on location of the common corner by the government survey. The difficulty lies with the fact that the government surveyor filed three sets of notes and falsified some of them, as agreed to by surveyor Fletcher for the plaintiff, and surveyor Watts for the defendant.

The land involved is located in the County of Garland, State of Arkansas, as described:

> All of the Southeast Quarter (SE ¼) of the Southeast Quarter (SE ¼) of Section 30, Township 3 South, Range 18 West, except that part thereof conveyed to Arkansas Power and Light Company by Warranty Deed recorded April 28, 1930, in Record Book 185 at page 201 of the records of Garland County, Arkansas, containing 20 acres, more or less.

It is through warranty deeds from Curtis C. Toler and Elliotte Toler to Arkansas Community Development Corporation, which shortly thereafter changed its name to Arkansas Communities, Inc., (defendant herein), that defendants claim the property in dispute lying east of Lake Catherine in the Southeast Quarter (SE ¼) of Section 30 in Township 3 South, Range 18 West. It is through warranty deeds that plaintiff AP & L claims the property from a call in Section 31, Township 3 South, Range 18 West, contained in the Longino deed of November 6, 1923. The primary question involved in the dispute, then, is the location of the common corner to sections 29, 30, 31 and 32, in Township 3 South, Range 18 West, in Garland County, Arkansas.

The Court has carefully analyzed the memorandum opinion and order of the Bankruptcy Judge entered January 5, 1983, adopting the report of findings and conclusions recommended by the Honorable Harley Cox, Special Master, December 9, 1982. The Court has also carefully read the transcript of the hearing conducted by the Special Master on January 20, 1982.[2] The Court has meticulously analyzed and considered numerous exhibits entered by both parties at the commencement of the hearing conducted by the Special Master.

Counsel for the parties have filed objections to the recommendations made by the Special Master to the Bankruptcy Judge, and excellent briefs as to objections and to the recommendation and order entered by

---

**2.** For some unexplained reason, pages 246 through 256 of the transcript of the hearing are  missing.

the Special Master and the Bankruptcy Judge. From the entire record in the case, well developed through discovery processes and through the hearing conducted, the Court proceeds to review the action on appeal in accordance with applicable rules and law.

At the outset the parties agreed, and the Bankruptcy Judge determined, that the issues involved should be bifurcated. The first phase should be limited to the dispute between plaintiff, AP & L, and defendant, ACI. If the plaintiff prevailed the second phase would be on the rights of the other defendants in the case.

The authority of this Court, United States District Court, Western District of Arkansas, is limited. Rule 8013 to the Bankruptcy Rules recently adopted effective August 1, 1983, provides that on an appeal the District Court * * * may affirm, modify, or reverse a Bankruptcy Court's judgment, order, or decree, or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court (Master) to judge the credibility of the witnesses.

Furthermore, Rule 53(e)(2) of the Federal Rules of Civil Procedure provides:

In an action to be tried without a jury the court shall accept the Master's findings of fact unless clearly erroneous.

In reaching a determination of the primary questions and additional issues of laches, estoppel, adverse possession and ejectment, federal law is applicable as to procedure, otherwise the law of Arkansas is applicable to the case.

The Court is of the opinion, after due consideration of the record in the case, that the findings of fact by the Special Master, approved by the Bankruptcy Judge, Numbers 1 through 11 and the first paragraph of Number 12, are justified by the record. The Court adopts such findings on the basis that they and each of them are not clearly erroneous, giving due regard to the opinion of the Master and the Bankruptcy Court to judge the credibility of the witnesses. The

Court has given consideration to the second paragraph of recommended Item 12. Evidently the Special Master determined, and the Bankruptcy Judge concurred, that the statute of limitations was not applicable because the defendant failed to raise the issue on a counterclaim. Apparently the Master determined that since there was no counterclaim the Master could not appropriately make a final and conclusive decision as to the ownership of the disputed property. This Court concludes that such finding is not supported by the record and the evidence presented on these issues and, therefore, clearly erroneous.

The Court also concurs in the conclusions of law determined by the Bankruptcy Judge, but is of the opinion that the record justifies additional conclusions in reaching determination of all the issues presented in this case.

As noted, the Bankruptcy Judge concludes correctly that the guidelines as set forth in the Manual of Instructions for Surveys are advisory only and will not be substituted for applicable rules of law with respect to the establishment of lost or destroyed corners as reflected on a government survey.

The decision in this case is based primarily on the testimony of two highly capable, qualified and outstanding surveyors in their field, Mr. William F. Fletcher, Executive Vice President of B & F Engineering, Inc., on behalf of the plaintiff, and Mr. Robert G. Watts, President of Thomas Engineering and Surveying Company, on behalf of the defendant. Mr. Fletcher is a graduate of the University of Arkansas in Civil Engineering. As president of B & F Engineering, Inc., he has performed survey work for the United States Corps of Engineers, United States Forest Service. He is registered as a land surveyor in the States of Arkansas and Missouri. Mr. Watts is primarily a surveyor with many years of experience in this field. He described his background, education and experience as a civil engineer from Ohio State University, strongly surveying oriented. Ohio was his experimen-

tal ground for the Federal Land Surveying System with some nine different types of federal land survey systems within the state. Mr. Watts is a registered surveyor in Ohio, Indiana, Arkansas and Alaska. He is registered as an engineer in Ohio, West Virginia and Kentucky.

Both Mr. Fletcher and Mr. Watts are highly respected in their profession and by each other. In fact, they worked together on one occasion in their joint efforts to locate the common corner of Sections 29, 30, 31 and 32.

It is established by the record that the survey of this particular area on behalf of the United States was by Mr. John C. Hale. There has been much discussion that Mr. Hale filed three sets of notes from his survey in 1937–38. Both Mr. Fletcher and Mr. Watts agreed that Mr. Hale, in the original survey of the property, falsified a part of his survey. Mr. Watts explained the part of Hale's survey in which he stated that Mr. Hale was not honest, "I think he lied." Further, Mr. Watts stated that it is evident that falsifying the survey was due to the fact that he turned in three separate notebooks for the same survey, "It becomes extremely difficult to read and see where he lied and where he told the truth."

Mr. Fletcher stated that there were some of the things that he and Mr. Watts agreed on and that is, "Hale falsified part of his notes, as stated previously, that Hale obviously had made an error in this line."

A number of witnesses testified from surveys by both parties over the years but it is obvious that, due to the circumstances, each of those who testified had to have as a basis of their survey the notes and work of Mr. Hale in the original survey of 1937. It appears to this Court that Mr. Fletcher's conclusions are based on what he thought were truthful conclusions and actual measurements of Mr. Hale. Mr. Watts concluded that this was speculation and that a correct decision should be determined in accordance with the appropriate provisions of the Manuel for Instructions for the Survey of the Public Lands for the restoration of lost corners.

■ As concluded by the Special Master and Bankruptcy Judge, the plaintiff, AP & L, has the burden of establishing that the location of the common corner is at Point "45" on AP & L's Exhibit No. 8 by a preponderance of the evidence. *Wallace v. Fordyce,* 234 Ark. 738, 354 S.W.2d 271, where the findings of the chancellor will not be disturbed unless it is shown that they are contrary to the preponderance of the evidence. No such showing is made here; *Mason v. Peck,* 239 Ark. 208, 388 S.W.2d 84, the location of a boundary line is to be determined by a preponderance of the evidence. *Buffalo Zinc & Copper Co. v. McCarty,* 125 Ark. 582, 189 S.W. 355; *Kieffer v. Williams,* 240 Ark. 514, 400 S.W.2d 485, where it is well settled that the location of boundary line is determined by a preponderance of the evidence and on appeal must be affirmed unless the holding is clearly against the preponderance of the evidence; *Whaley v. Niven,* 175 Ark. 839, 844–845, 1 S.W.2d 3, burden of proof by preponderance of the evidence required; *Thompson v. Darr,* 174 Ark. 807, 813, 298 S.W. 1, the court concluded, "The survey could not change the corner established by the government survey, as these first monuments prevail over both course and distance.

The Supreme Court of Wisconsin, in the case of *Lewis v. Prien,* 73 N.W. 654, 98 Wis. 87, said:

The unvarying rule to be followed in such cases is to start at the nearest known point on one side of the lost corner, on the line on which it was originally established; to then measure to the nearest known corner on the other side, on the same line; then, if the length of the line is in excess of that called for by the original survey, to divide it between the tracts connecting such two known points in proportion to the lengths of the boundaries of such tracts on such line as given in the survey.

■ From the well established rule, the Special Master and the Bankruptcy Judge correctly found that the plaintiff, AP & L,

failed to demonstrate the location of the originally established corner by a preponderance of the evidence and that the establishment of the common corner at Point "45" on plaintiff's Exhibit No. 8 is not supported by evidence which could not be susceptible of more than one reasonable interpretation. However, neither the Special Master nor the Bankruptcy Judge reached any conclusion as to the ownership of the disputed lands. It is admitted that the defendant, ACI, is in possession of the 9½ acres and that it is included with the defendant's development of its Diamondhead Subdivision.

The Bankruptcy Court decided, as recommended by the Special Master, in the second paragraph of Item 12 of the opinion, that:

> No person or company has had open or continuous adverse possion of the disputed land for the period of the seven year statute of limitation and the plaintiff has not been guilty of laches in the assertion of its claim thereto.

The defendant acquired title to the property for development of Diamondhead Subdivision in 1969. Mr. Watts, the surveyor, was employed by Mr. Utley, President of Arkansas Community Development Corporation, to survey the entire property. Mr. Watts worked for a period of five months on his survey but did not conclude his work in certain areas. He did complete his survey in the area of the property in dispute and described the points he developed as to precise corners and lines.

Within a period of a few weeks Arkansas Community Development Corporation had a change of corporate name to Arkansas Communities, Inc.

In 1969 Arkansas Communities, Inc., contacted a Mr. McCarty, President of International Land Corporation, about acquiring the property. International was composed of investors and real estate brokers. International funded the property for the investors who, in turn, sold it to the defendant, ACI. However, the development of the property commenced in 1969, as testified to by several witnesses, as surveyed by Mr.

Watts. The development plan was never changed, and ACI had acquired all of the land by 1971. Mr. Watts had surveyed the design and layout of in excess of 3800 individual residential lots and commercial lots, establishing the boundaries.

The Toler property, the property in issue in this lawsuit, consisting of 20 acres, was the property acquired as described conveyed to Arkansas Community Development Corporation May 30, 1969. (Defendant's Exhibit No. 3). Development commenced even prior to 1971 when ACI ultimately purchased the entire property for the subdivision. The defendant has had possession and control of the disputed property since.

The road and water lines of the disputed property were initially developed in 1970. They were in place prior to providing data to the Department of Housing and Urban Development as part of the land sales program registration requirements. Improvements were in place prior to recording of the plat in 1973, which added the southern most tier of lots on Section M–1 of Diamondhead containing a part of the disputed lands.

■ The "clearly erroneous" rule is applicable to this case. Rule 53(e)(2) of the Federal Rules of Civil Procedure, 28 U.S.C., provides that the court shall accept the Master's findings of fact "unless clearly erroneous." A factual finding by a Master is not "clearly erroneous" unless it stems from a mistaken view of law or unless, although it be supported by circumstantial evidence, the court is entirely convinced after a consideration of the evidence that a mistake has been made. *McGraw Edison v. Central Transformer*, 196 F.Supp. 664 (1961) (citations omitted).

Although the defendants had continuous possession of the property from May, 1969, and not later than 1971, during which time substantial development occurred, lots surveyed, lots laid out, and water lines provided and the plaintiff provided electrical service up to 1975 for the development of Diamondhead, no contention was made by the plaintiff of any interest it may have

until December 18, 1979, by filing suit in the Circuit Court of Garland County, Arkansas.

The testimony of Mr. Walter Arnold Utley provides a clear and undisputed account of the title to the Diamondhead property, including the property in dispute, as acquired by defendant. Mr. Utley testified he was, at the time, president of the defendant, Arkansas Communities, Inc., and had been since 1969. The property was initially acquired by Arkansas Community Development Corporation in 1969 and a few months later, through change of corporate name, became the property of the defendant, Arkansas Communities, Inc.

As already noted herein, Mr. Joe McCarty contacted Utley on behalf of Walter Truelock, Linda McClure, George McClure and himself. The McClures resided at Malvern, Arkansas. They were investors and real estate brokers. Mr. Utley was president of International Land Corporation, which funded the property for a brief time. Negotiations for the acquisition of the lands started in December, 1968. Utley recommended, after inspection, all of the property that should be acquired. He was asked by counsel if all of the lands had been acquired by 1971. He replied: "Yes, sir. I believe the last acquired was ... one of the last pieces probably was acquired in early spring of '69." He referred to the warranty deed to the Toler property dated May 30, 1969 (D.Ex. 3). He further testified as to the total acreage acquired and identified each tract by name of which he took possession at that time (TR pp. 137–140).

■ In consideration of the testimony adduced at the hearing by the Master, exhibits, and the entire record of the case, including specific objections of both parties and briefs, this Court is persuaded and concludes that the Special Master and the Bankruptcy Judge applied the law applicable to the issue on adverse possession incorrectly. The record established as a matter of fact from the preponderance of the evidence that the defendant was and had been in possession of the disputed property for a period of time in excess of seven (7) years.

Applying the Arkansas law, Section 37–101, Ark.Stat., 1947 Ann., 1963 Replacement, provides:

No person or persons or their heirs shall have, sue or maintain any action or suit, either in law or equity, for any lands, tenements, or hereditaments but within seven [7] years next after his, her or their rights to commence, have or maintain such suit shall have come, fallen or accrued; and all suits, either in law or equity for the recovery of any lands, tenements or hereditaments shall be had and sued within seven [7] years next after title or cause of action accrued, and no time after said seven [7] years shall have passed.

■ The Special Master and the Bankruptcy Court correctly concluded in Item 4 of the conclusions of law that the statute of limitation governs the right to challenge another in actual or adverse possession of a tract of land for seven years.

However, the second paragraph of the findings of fact that "no person or company has had open and continuous adverse possession of the disputed land for a period of the seven year statute of limitation" is, in the opinion of this Court, a mistake and "clearly erroneous" as established by the record as contrary to the preponderance of the evidence. *Mason v. Peck,* supra; *McGraw Edison v. Central Transformer,* supra, at 666–667.

In view of the Court's conclusion that the statute of limitation on adverse possession is applicable, it is unnecessary for the Court to reach the question of laches on the part of the plaintiff.

The Court incorporates herein its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

Judgment will be entered in accordance with this opinion.

EXHIBIT A
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

IN RE: ARKANSAS COMMUNITIES, INC.
                    Debtor-in-Possession.                    NO.   HS 80–022
ARKANSAS POWER & LIGHT COMPANY,
                    Plaintiff,

            Vs.                                              NO.   AP 80–197

ARKANSAS COMMUNITIES, INC., ET AL,
                    Defendants.

---

MEMORANDUM OPINION

CHARLES W. BAKER, Bankruptcy Judge.

Before the Court, in AP 80–197, is a Complaint filed by Arkansas Power & Light seeking title to and possession of certain real property located in Garland County, Arkansas. Pursuant to an agreement by the parties and an Order of this Court dated September 11, 1981. Hon. E. Harley Cox, Jr. was appointed Special Master to hear the case. A hearing was held on this matter on January 20–22, 1982. The plaintiff was represented by Don F. Hamilton and the defendant, Arkansas Communities, Inc., by Robert J. Brown.

The Court having received the recommended Findings of Fact and Conclusions of Law, adopts them as follows:

FINDINGS OF FACT

1. The dispute between the parties in this action concerns the location of the corner common to Sections 29, 30, 31, and 32 in Township 3 South, Range 18 West in Garland County, Arkansas.

2. The plaintiff, Arkansas Power & Light Company, by stipulation of the parties, is the owner of the fee simple title to the following lands in Garland County, Arkansas, to-wit:

The East Half of the Northeast Quarter of Section 31, Township 3 South, Range 18 West.

3. The defendant, Arkansas Communities, Inc., is the owner of the fee simple title to the Southwest Quarter of the Southwest Quarter of Section 29, in Township 3 South, Range 18 West.

4. The dispute between the parties as to the true location of the corner common to Sections 29, 30, 31, and 32 (hereinafter "the common corner") involves approximately 9.5 acres of land which would, respectively be within the description of lands owned by the plaintiff, if the plaintiff's location of the common corner was accepted, or within the description of property owned by the defendant if the defendant's location of the common corner was accepted.

5. The plat of the survey, and the three independent sets of field notes prepared by John C. Hale, the contract surveyor employed by the United States to plat and mark Township 3 South, Range 18 West, in Garland County, Arkansas, is inaccurate and inconsistent. There is significant evidence that John C. Hale falsified a significant portion of his field notes with respect to the survey of this property, and some of his field notes from the three separate sets of notes respecting this township are in conflict.

6. None of the sets of field notes attributable to John C. Hale with respect to the survey of the township which includes the common corner indicate that the Common Corner was marked precisely by a monument although bearing trees are noted for the location of this corner in all of the sets of notes.

7. The plat of Township 3 South, Range 18 West, reflects that each section therein is a regular section with 80 chains on the east-west lines and 80 chains on the north-south lines of each section and with no variances or discrepancies of significance between the east-west and north-south lines when, in fact, numerous sections in the township are greater or less than 80 chains in dimension on one or more sides and there are discrepancies between established and accepted lines from true north-south and east-west, particularly at points on opposite sides of the Ouachita River. The north-south line dividing Sections 31 and 32 and Sections 29 and 30 in Township 3 South, Range 8 West, is at least 66 feet further north and south in usage and between accepted monuments than was originally shown on the government survey plat.

8. The point which the plaintiff contends is the location of the originally established common corner according to the government survey is marked at Point "45" on the map which is Arkansas Power & Light Company's Exhibit No. 8 in this cause.

9. Establishment of the common corner at the point referred to as Point 45 on Arkansas Power & Light Company's Exhibit No. 8 would be at variance from bearings and distances of otherwise established and accepted monuments purportedly corresponding with those established by John C. Hale in the original government survey.

10. The *Manual for Instructions for the Survey of the Public Lands of the United States,* 1973, promulgated by the United States Department of Interior, Bureau of Land Management (the "Manual") contains the following instructions in connection with Chapter V, "Restoration of Lost or Obliterated Corner":

5–21. The rules for restoration of lost corners should not be applied until all original and collateral evidence has been developed. When these means have been exhausted, the surveyor will turn to proportionate measurement, which harmonizes surveying practice with legal and equitable considerations. This plan of re-locating a lost corner is always employed unless outweighed by conclusive evidence of the original survey.

and

5–46. The rules cannot be elaborated to reconstruct a grossly erroneous survey or a survey having fictitious field notes.

Section 5–16(2) of the Manual further provides that evidence as to the location of a lost or obliterated corner should not be susceptible of more than one reasonable interpretation.

11. The establishment of the common corner at Point 45 on Arkansas Power & Light Company's Exhibit No. 8 is not supported by evidence which could not be susceptible of more than one reasonable interpretation.

12. Arkansas Power & Light Company has failed to demonstrate the location of the originally established common corner at the point marked "45" on its Exhibit No. 8 in this cause by a preponderance of the evidence.

No person or company has had open or continuous adverse possession of the disputed land for the period of the seven year statute of limitation and the plaintiff has not been guilty of laches in the assertion of its claim thereto.

## CONCLUSIONS OF LAW

1. The plaintiff, Arkansas Power & Light Company, has the burden of establishing that the location of the Common Corner is at Point 45 on Arkansas Power & Light Company's Exhibit No. 8 as it contends and alleges by a preponderance of the evidence. *Wallace v. Fordyce,* 234 Ark. 738, 354 S.W.2d 271; *Kieffer v. Williams,* 240 Ark. 514, 400 S.W.2d 485; *Buffalo Zinc & Copper Co. v. McCarty,* 125 Ark. 582, 189 S.W. 355, Cf.; *Brown Paper Mill Co., Inc. v. Warnix,* 222 Ark. 417, 259 S.W.2d 495.

2. The location of the common corner must be either determined at the precise location at which it was originally designated and monumented or otherwise it must be established by apportionment.

3. Instructions to surveyors as set forth in the Manual are considered as advisory, only, and will not be substituted for the applicable rules of law with respect to establishment of lost or destroyed corners as reflected on government survey.

4. The statute of limitation governing the right to challenge another in actual and adverse possession of a tract of land is seven years.

5. The complaint of Arkansas Power & Light Company in this cause should be dismissed.

Jan. 5, 1983.